UNITED STATES OF AMERICA,

    Plaintiff.

v.

CHAD M. SCHAMPERS,

    Defendant.

Case No. 22-CR- 22-CR-31

[18 U.S.C. § 1343 and 1957]

# INDICTMENT

**THE GRAND JURY CHARGES THAT:**

## BACKGROUND

At all times material to this Indictment:

### *The Defendant and Relevant Entity*

1. CHAD M. SCHAMPERS was a resident of De Pere, Wisconsin, and a registered agent of Summit Contracting, Inc. ("Summit"), a Wisconsin corporation.

### *The Small Business Administration*

2. The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

3. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans had government-backed guarantees.

*The Paycheck Protection Program*

4. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in and around March 2020 and designed to provide emergency financial assistance to the millions of Americans suffering the economic effects caused by the COVID-19 pandemic.

5. One source of relief that the CARES Act provided was the authorization of up to $349 billion in forgivable loans to small businesses for payroll, mortgage interest, rent/lease, and utilities, through a program referred to as the Paycheck Protection Program ("PPP"). In April 2020, Congress authorized up to $310 billion in additional PPP funding.

6. The PPP allowed qualifying small businesses and other organizations to receive PPP loans. Businesses were required to use PPP loan proceeds on payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a certain percentage of the PPP loan proceeds on payroll expenses.

7. The amount of a PPP loan that a small business was entitled to receive was determined by the number of employees employed by the business and the business's average monthly payroll costs.

8. In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) had to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was

eligible to receive under the PPP. In addition, businesses applying for a PPP loan had to provide documentation showing their payroll expenses.

9. The SBA oversaw the PPP. However, individual PPP loans were issued by private, approved lenders who received and processed PPP applications and supporting documentation, and then made loans using the lenders' own funds, which were 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

### *Relevant Lender*

10. Lender 1 was an approved SBA lender and participated as a PPP lender to small businesses.

### *The Scheme to Defraud*

11. From in or about April 2020 through in or about July 2020, in the State and Eastern District of Wisconsin and elsewhere,

**CHAD M. SCHAMPERS,**

with the intent to defraud, knowingly devised, participated in, and carried out a scheme to defraud and obtain money by means of materially false and fraudulent pretenses, representations, and promises, which scheme is described more fully below.

### *The Purpose of the Scheme and Artifice*

12. It was the purpose of the scheme for the defendant, and others known and unknown to the Grand Jury, to unlawfully enrich themselves by making false statements about the intended use of the loan proceeds.

### *Manner and Means of the Scheme*

3

13. It was part of the scheme that the defendant submitted and caused to be submitted a fraudulent PPP loan application to Lender 1 for the purpose of obtaining funds from Lender 1.

14. It was further part of the scheme that the defendant falsely represented the intended use of the funds, claiming that the funds would be used for legitimate business expenses. Specifically, the defendant falsely claimed that he intended to spend loan proceeds on payroll, lease and mortgage expenses, interest, and utilities. In fact, the loan funds were used for, among other things, personal expenses and other non-business expenses.

## COUNT ONE
*Wire Fraud* – 18 U.S.C. § 1343

15. All of the allegations set forth in paragraphs 1-14 are hereby incorporated in support of the following charge as if set forth here in full.

16. On or about April 28, 2020, in the State and Eastern District of Wisconsin and elsewhere,

**CHAD M. SCHAMPERS,**

and others known and unknown to the Grand Jury, for the purpose of executing his scheme to defraud, knowingly caused to be transmitted in interstate commerce a wire transfer of $292,500 from Lender 1, in New Jersey, to Account XXX9300 at Community First Credit Union in Appleton, Wisconsin.

All in violation of Title 18, United States Code, Section 1343.

## COUNT TWO
*Money Laundering - 18 U.S.C. § 1343*

**THE GRAND JURY FURTHER CHARGES THAT:**

17. On or about May 5, 2020, in the State and Eastern District of Wisconsin and elsewhere,

**CHAD M. SCHAMPERS**

knowingly engaged in a monetary transaction in criminally derived property of a value greater than $10,000, and which in fact was derived from specified unlawful activity, namely, the defendant transferred the sum of $72,610 for the purchase of a residential property, which funds in fact were derived from the wire fraud alleged in Count One.

In violation of Title 18, United States Code, Section 1957.

5

Case 1:22-cr-00031-WCG-NJ   Filed 02/01/22   Page 5 of 7   Document 1

## FORFEITURE NOTICE

1. Upon conviction of an offense alleged in the Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), by way of Title 28, United States Code, Section 2461(c), any property that constitutes or is traceable to proceeds of the offense. This property includes, but is not limited to, a sum of money reflecting the proceeds the defendant obtained from the offense.

2. Upon conviction of an offense alleged in the Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property involved in the offense, or any property traceable to such property. This property includes, but is not limited to, a sum of money reflecting the proceeds the defendant obtained from the offense.

3. If any of the above-described forfeitable property, as a result of any act or omission of the defendant,

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c), to seek the forfeiture of any other property of the defendant, up to the value of the above-described forfeitable property.

A TRUE BILL:

████████████
FOREPERSON

Dated: 2/1/2022

*fw* /s/ *Megan B. H.*
RICHARD G. FROHLING
United States Attorney